# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAURA LAAMAN AND ASSOCIATES, LLC ) | |
| ) | |
| Plaintiff, ) | COMPLAINT FOR INJUNCTIVE |
| ) | AND OTHER RELIEF |
| vs. ) | |
| ) | |
| LORI DAVIS, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Laura Laaman & Associates, LLC d/b/a Outstanding Pet Care by its attorneys, Jackson Lewis PC, files this Complaint against Lori Davis ("Defendant"), and alleges:

## PARTIES, JURISDICTION, VENUE AND LAW

1. This is an action asserting statutory and common law claims, including misappropriation of trade secrets under the Connecticut Uniform Trade Secrets Act, violation of the Lanham Act, violations of the Connecticut Unfair Trade Practices Act, and tortious interference with business expectancies.

2. Laaman & Associates, LLC is a Connecticut Limited Liability Company. Laaman & Associates, LLC's principal place of business is in Southbury, Connecticut.

3. Upon information and belief, Defendant is a citizen of Connecticut and resides at 193 Branch Brook Road, Wilton, Connecticut, 06897.

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 by virtue of the federal questions involved herein and the fact that the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs.

5. Venue lies in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in this district.

## FACTUAL BACKGROUND

6. Laura Laaman, the founder of Laaman & Associates, has been providing training and consulting services to businesses since 1989.  Laaman's expertise includes salesmanship, leadership and customer service.

7. Laaman & Associates' Outstanding Pet Care ("OPC") provides sales, management and customer service training and consulting services exclusively tailored for the pet care industry.

8. OPC is dedicated to helping pet care providers and veterinarians maximize their business potential through various tools.

9. OPC has spent tremendous resources and many years developing and honing its training materials and strategies.

10. Telephone training is a significant component of OPC's services.  OPC trains pet industry employees using its proprietary 10 Star Certification Program.

11. OPC offers online courses via the Outstanding Pet Care Learning Center.  In addition to sales and management training courses, the Learning Center offers courses to help its clients better understand canines and safety practices.  The Learning Center is unique to OPC.

12. OPC assists clients with marketing, pricing, and networking.  OPC's Admin Suite is designed to help clients track key components of their revenue.  OPC's Admin Suite is unique to OPC.

13. Information regarding OPC's: (i) research, development, copyright development and licensing thereof, trade secrets, inventions, formulas, designs, drawings, processes, equipment; (ii) marketing techniques, price lists, pricing policies, sales, costs, business method, formulas, product specifications, studies, training techniques, planning; (iii) the names of OPC's customers and their representatives, customer services, or the type, quantity and specifications of products purchased by or from customers; (iv) OPC's computer techniques, programs and software are principal assets of OPC.

14. Such trade secrets are of significant economic value to OPC, and would be of significant economic value to competitors in the pet care industry.

## DEFENDANT'S EMPLOYMENT BY OPC

15. Defendant was employed by OPC from December 2008 through September 2012. Defendant was the Director of Client Services for OPC.

16. As a condition of her employment, Defendant entered into a Confidentiality/Non-Compete Agreement with OPC.

17. As part of the Confidentiality/Non-Compete Agreement, Defendant was required to maintain the confidentiality of business information relevant to this complaint and further agreed OPC would have all rights and title to concepts and ideas relating to OPC's business, including such concepts and ideas relating to OPC's business made or conceived by Defendant within the one year period immediately after termination of her employment with OPC.

18. In this position, Defendant was responsible for developing and maintaining OPC's relationships with its customers. Defendant provided training and consulting services to OPC's customers using OPC's training programs, techniques, and business model.

19. By virtue of her position at OPC, Defendant became aware of most or all of OPC's key customers and partners, developed relationships with many of the representatives of those key customers and partners, and learned confidential information regarding specific customer and partner needs and requirements, and logistical, service issues and financial information related to customers and partners.

20. Moreover by virtue of her role with OPC, Defendant was privy to confidential information regarding OPC's services and training products. Defendant was privy to many segments of OPC's business, including its proprietary training programs, business strategies, and other critical business information that would be invaluable – and unavailable – to an OPC competitor.

## ACTIONS OF DEFENDANT

21. In September 2012, Defendant ended her employment with OPC. Defendant was subject to an employment agreement that contained non-competition, non-disclosure and non-solicitation provisions.

22. Upon information and belief, as soon as Defendant's non-competition restriction lapsed, she began offering training and consulting services for the pet care industry.

23. Upon information and belief, Defendant has been operating under the business name Paramount Success Group ("Paramount").

24. Defendant offers customer service, sales, and leadership training; marketing advisement; coaching; and a web-based product called Virtual Paramount Management ("VPM"). VPM offers, among other things, webinar training, call monitoring, success benchmarks, and remote sales, customer service, and marketing management.

25. Defendant's business is focused, in part, on the pet care industry.

26. Defendant has appeared at pet care industry trade shows, presented material that is the same or substantially to OPC's training, and represented to the public that she provides the same services and training programs as OPC.

27. Defendant has used, and continues to use, OPC's words, terms, or devices, (1) in commerce, (2) without OPC's consent, (3) in connection with services, and (4) in a manner likely to cause confusion or mistake or to deceive purchasers as to the source or origin of such services or as to Defendant's affiliation, connection or association with OPC.

28. Defendant's public presentations advertise her business relationships with OPC's clients and customers. Defendant formed these relationships as OPC's employee.

29. Upon information and belief, Defendant has used OPC's confidential and proprietary customer and partner information to solicit OPC's customers and partners.

30. Upon information and belief, Defendant has used, and will continue to use, OPC's confidential and trade secret information for purposes of her competitive business efforts.

## **FIRST COUNT**

### (VIOLATION OF THE LANHAM ACT)
### 15 U.S.C. § 1125

31. OPC restates and incorporates by reference all of the previous allegations as if fully rewritten herein.

32. Defendant is engaged in commerce.

33. During presentations to the public regarding her business services, Defendant has used words, terms, devices, and combinations thereof that are specific to, and identified with, Plaintiff's business.

34. Defendant has represented to the public that she created training materials, which are the same or substantially similar to OPC's.

35. Defendant's actions are likely to cause confusion or mistake or to deceive purchasers as to the source or origin of such services or as to her affiliation, connection or association with OPC.

36. Defendant's conduct amounts to unfair competition under the Lanham Act and has caused actual damages as set forth in the Damage Count below, as well as irreparable damages to the good name and reputation of the Plaintiff.

## SECOND COUNT

### (VIOLATION OF CONN. UNIFORM TRADE SECRETS ACT)

37. OPC restates and incorporates by reference all of the previous allegations as if fully rewritten herein.

38. OPC owns valuable trade secrets and takes great measures to prevent its competitors and others from obtaining its trade secrets, including requiring its employees to sign a confidentiality and noncompetition agreement as a condition of employment.

39. OPC provided information to Defendant during the course of her employment that are trade secrets as defined by the UTSA, Conn. Gen. Stat. § 35-51.  Specifically, Defendant had access to OPC's formulas, programs, devices, methods, techniques, processes, cost data and customer lists.

40. Defendant gained access to and learned OPC's trade secrets in confidence, and was under a contractual duty not to use of disclose OPC's trade secrets without OPC's authorization and consent.

41. OPC is informed and believes, and thereupon alleges, that Defendant misappropriated OPC's trade secrets by using and disclosing them, and by continuing to use and disclose them, without OPC's consent or authorization.

42. Defendant's misappropriation of OPC's trade secrets was willful and malicious.

43. Defendant's misappropriation, as described herein, injures OPC in that Defendant is able to unfairly benefit herself by using OPC's trade secrets and to target OPC's customers.

44. The conduct of Defendant constitutes a violation of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. § 35-50, *et seq.*

45. As a proximate consequence of the conduct of Defendant, OPC has suffered and will continue to suffer severe and irreparable damages, including monetary damages and other harm for which OPC will not have and adequate remedy at law harm.

## THIRD COUNT

## (BREACH OF CONTRACT)

46. OPC restates and incorporates by reference all of the previous allegations as if fully rewritten herein.

47. On or about December 24, 2008, Defendant entered into a contract with OPC entitled Confidentiality/Non-Compete Agreement.

48. The Confidentiality/Non-Compete Agreement included restrictions on the use of "Confidential Information," defined as "information which is not generally known in the relevant trade or industry in confers an economic advantage to [OPC] or a client of [OPC] and includes trade secrets and information to disclosed to me or known by me as a consequence of or through my employment by [OPC] (including information conceived, originated, discovered by me), including information received or acquired from a client

7

of [OPC], whether or not in the field of employment, including information about [OPC] products, processes and services including information relating to research, development, inventions, purchasing as well as actual and customer lists, customer contacts, cost and pricing information.

49. Specifically, Defendant agreed that except as required in her duties to [OPC] or with the prior written authorization of an officer of [OPC] that she would not "use, disseminate, disclose, lecture upon or published articles revealing any Confidential Information."

50. Defendant's actions as alleged herein, used, disseminated, disclosed, lectured upon, and published articles revealing Confidential Information.

51. The conduct of Defendant constitutes a breach of the terms of the Confidentiality/Non-Compete Agreement.

52. As a proximate consequence of the conduct of Defendant, OPC has suffered and will continue to suffer severe and irreparable damages, including monetary damages and other harm for which OPC will not have and adequate remedy at law harm.

## FOURTH THIRD COUNT

### (VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT)

53. OPC restates and incorporates by reference all of the previous allegations as if fully rewritten herein.

54. Defendant is a "person" within the meaning of Conn. Gen. Stat. § 42-110(a)(3).

55. Defendant has integrated OPC's confidential and proprietary information, including its training programs, strategies, terminology, and methods, into her training programs, products, and services to compete with OPC. These actions constitute unfair and deceptive practices as unlawful, unethical, and violative of public policy.

56. Defendant acted intentionally, wantonly or with reckless indifference to OPC's right to keep its confidential and proprietary information confidential.

57. As a direct and proximate result of the acts and course of conduct of Defendant that are described above, OPC has suffered actual damages and will continue to suffer irreparable injury and harm that is incalculable.

58. Pursuant to Conn. Gen. Stat. § 42-110g(c), a copy of this Complaint has been mailed to the Attorney General and the Commission of Consumer Protection.

## FIFTH COUNT

### (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS)

59. OPC restates and incorporates by reference all of the previous allegations as if fully rewritten herein.

60. Through her employment at OPC, Defendant knew of OPC's business relationships with its customers and partners.

61. Upon information and belief, Defendant intentionally, maliciously, and without justification acted to deprive OPC of its existing business relationships by misappropriating and misusing confidential information.

62. Defendant's interference was wrongful and tortious.

63. As a result of the tortious interference by Defendant, OPC has suffered and will continue to suffer severe and irreparable damages, including liquidated damages, other monetary damages and other harm for which OPC will not have and adequate remedy at law harm.

## **CLAIM FOR RELIEF**

WHEREFORE, and as a result of the foregoing, OPC respectfully requests:

A. Preliminary and permanent injunctions prohibiting Defendant from using OPC's confidential and proprietary information to solicit or divert business from any customer or partner existing at the time Defendant terminated her employment with OPC;

B. Preliminary and permanent injunctions prohibiting Defendant from the use or disclosure of trade secrets in violation of the Connecticut Uniform Trade Secrets Act;

C. Preliminary and permanent injunctions prohibiting Defendant from further unfair methods of competition and unfair or deceptive acts or practices;

D. Damages in an amount to be determined at trial;

E. Costs, interest and reasonable attorneys' fees;

F. Punitive damages and attorneys' fees as provided for in Conn. Gen. Stat. § 35-53;

G. Punitive damages and attorneys' fees as provided for in Conn. Gen. Stat. § 42-110g;

H. All profits unlawfully obtained by Defendant, Plaintiff's damages, and attorneys' fees and costs, as provided in 15 U.S.C. § 1117; and

I. Such other and further relief as this Court may deem proper.

## JURY DEMAND

OPC seeks a jury trial on all counts so triable.

        Respectfully submitted,

        */s/ Conrad S. Kee*
        Conrad S. Kee (CT 16904)
        Jackson Lewis P.C.
        1010 Washington Boulevard, 7th Floor
        Stamford, Connecticut 06901
        Tel: (203) 961-0404
        KeeC@jacksonlewis.com

4832-9905-9247, v. 4